

Office: (954) 766-8826  
Fax: (954) 764-3486

11760 W. Sample Road, #103  
Coral Springs, Florida 33065

## Confidential Forensic Psychological Evaluation

| | |
|---|---|
| **Examinee's Name:** | Michael Simpson |
| **Case #:** | 21-8520CF10A |
| **Date of Evaluation:** | 10-28-22 |
| **Date of Report:** | 10-30-22 |
| **Judge:** | N. Hunter Davis |
| **Defense Attorney:** | David Sobel, Esquire |
| **Examiner:** | Michael P. Brannon, Psy.D. |

**Referral Information:** The examinee was evaluated at the request of his attorney, Mr. David Sobel, for a psychological evaluation for possible use in a mitigation hearing. The examinee was evaluated on the above date via telephone video-conferencing. He was incarcerated at Paul Rein Correctional Facility in Pompano Beach, Florida at the time of this assessment. He is charged with Lewd and Lascivious Molestation Victim Less Than 12 Years of Age and Offender 18 Years of Age or Older, Sell Obscene Material to a Minor, and Lewd and Lascivious Exhibition. He has been incarcerated since 09-09-21.

**Confidentiality/Informed Consent:** The examinee was informed of the purpose of the current assessment and the limitations of its confidentiality and he agreed to participate in the evaluation. He was encouraged to be honest in his responses to this examiner's inquiries and when completing psychological testing.

**Sources of Information:**

    Clinical Interview  
    Mental Status Examination  
    Millon Clinical Multiaxial Inventory – Fourth Edition (MCMI-IV)  
    Beck Depression Inventory – Second Edition (BDI-II)  
    Beck Anxiety Inventory (BAI)  
    Beck Hopelessness Scale (BHS)  
    Reliable Digit Span  
    Structured Interview for Malingered Symptomatology (SIMS)  
    Telephone Interview with Ms. Vicky Simpson (examinee's mother)

**Relevant Historical Information:** Mr. Simpson reported that he is 24 years of age and that he was born in Coral Springs, Florida on 02-09-98. He stated that he was raised by his mother and father along with two brothers and one sister. He did not report any incidents of physical, sexual, or emotional abuse during his formative years. He stated that he observed several incidents of domestic violence between his mother and father in his childhood home. He stated that he became physically involved in several of his parent's altercations when he was a teenager. He described his childhood as "mostly okay." He reported a family history of mental illness (sister, brother, father, grandmother). He was not aware of any family history of drug/alcohol abuse.

Academically, the examinee reported that he completed high school in honors classes. He stated that he earned above-average grades in school. He stated that he attended two years of college. He related that he was never retained in a grade level. He did not report behavioral problems in school. He reported problems in school due to inattentiveness. He related that he was diagnosed with Attention-Deficit/Hyperactivity Disorder (ADHD) while in school and prescribed stimulant medication (Strattera, Adderall) for the symptoms of that condition. He related that he was involved in the science/technology club and DECA while in school. He reported that he was never bullied or excessively teased by his peers in school.

The examinee reported that he has never been married. He related that his longest romantic relationship lasted for four years. He reported that his longest period of cohabitation in a romantic relationship was for approximately one year. He did not report any incidents of domestic violence in his romantic relationships. He reported that he does not have any children. He related that he was residing with his mother and father in Pompano Beach, Florida at the time of his arrest. He reported that he has never been homeless.

Occupationally, the examinee reported that he was employed as a branch manager of a flooring supply company at the time of his arrest. He stated that his longest job lasted for three years. He related that he was never fired from a job. He reported that he has never received Social Security disability benefits. He revealed that he received unemployment benefits during the coronavirus pandemic. He related that he has never served in the military.

Legally, the examinee reported that he was never arrested before his current charges. He stated that he has never been a member of a delinquent youth gang, militia group, or cult.

Socially, the examinee reported that he has several friends in the community. He indicated that none of his friends have experienced legal problems. He stated that none of his friends abuse drugs or alcohol. Recreationally, the examinee reported that he enjoys playing video games.

Regarding his mental health history, the examinee reported that he has participated in outpatient psychiatric case management services since he was nine years of age. He stated that he participated in outpatient individual counseling between the age of 9 and 16. He related that he was receiving monthly treatment from a psychiatrist (Dr. Robert Vassal) at the time of his arrest. He stated that he has been diagnosed with Bipolar Disorder, ADHD, and depression. He reported that he has been prescribed psychotropic medication in the past and that he was taking Tegretol (anti-convulsant), Effexor (antidepressant), and Lamictal (mood stabilizer) at the time of this assessment. He related that he has never been psychiatrically hospitalized or a resident in a program. He reported that he has never attempted suicide, although he has entertained ideations of self-harm on several occasions. He revealed that he purposefully cut himself several times when he was a teenager. He related that he experiences severe mood fluctuations when he is not prescribed psychotropic medication. He reported that he has experienced numerous symptoms of depression and anxiety. He stated that he has experienced auditory hallucinations for the past several years mostly in the form of "people calling my name." He did not report any "special powers" or other possible delusional beliefs. He revealed a history of anger control problems. He stated that he was exposed to traumatic incidents when he suffered an unexplained coma for two weeks when he was 9 years of age and in a near-drowning experience when he was 16 years of

age. He did not report any symptoms of posttraumatic stress from either incident.

The examinee acknowledged that he has used alcohol. He stated that he experimented with marijuana on two occasions. He reported that he has never used any other illicit drugs. He related that he has never abused prescription medication. He revealed that he initially used alcohol when he was 18 years of age. At the time of his arrest, he stated that he was using alcohol at an approximate rate of two times per year. He reported that he has never used alcohol daily. He reported that he has never experienced a "black-out" due to the abuse of alcohol. He stated that he has never participated in substance rehabilitation treatment or attended a recovery group meeting. He reported that he has never engaged in problematic gambling behaviors.

Medical health was reported as remarkable due to asthma, herniated discs, and arthritis. He stated that he has never suffered a head injury.

**Mental Status Examination:** The examinee was appropriately groomed and attired in a blue jail uniform. He reported his height as 5'9 and his weight as 213 pounds. He wore eyeglasses during the assessment and he displayed a tattoo on his right upper arm. His general clinical presentation was cooperative and his demeanor was pleasant. He remembered this examiner from a prior evaluation. He was able to state his name, date, and location. Motor responses were within normal limits with no apparent impairments. Eye contact was direct. His attention span was within normal limits as he was not easily distracted by extraneous stimuli. Memory functions were intact on brief measures of those cognitive skills. Responses to examiner inquiries were appropriate in volume, pacing, and word production. He did not display any behaviors that were suggestive of the presence of imaginary internal stimuli (hallucinations). He did not verbalize any statements that were suggestive of an active delusional belief system. Functional intelligence was grossly estimated in the High Average range based on his use of vocabulary and general fund of knowledge. He expressed his emotions in a full range and his mood was congruent with the content of the assessment. Judgment, problem-solving skills, and insight were good. He did not report suicidal or homicidal ideations or plans.

**Collateral Interview:** In a telephone interview with the examinee's mother, Ms. Vicky Simpson, she reported that her son was never exposed to abuse during his childhood. She stated that he completed high school and attended "some college." She reported that he displayed academic problems at times while in school. She related that he was diagnosed with ADHD while in school and prescribed stimulant medication for the symptoms of that condition. She further stated that he displayed symptoms of depression while he was in school, including cutting himself and stating that he wanted to die. As a result, she stated that he participated in individual counseling sessions when he was a juvenile. As an adult, she reported that her son was diagnosed with Bipolar Disorder and was prescribed psychotropic medication by a psychiatrist for that condition. She stated that he has displayed severe mood fluctuations. She reported that he has never displayed anger control problems and that she has never observed him engage in aggressive behaviors toward others. She stated that her son was never arrested before the current legal charges and that he has not displayed problems complying with established rules and regulations. She revealed a family history of mental health problems. She was not aware of any drug or alcohol abuse by her son. She stated that he has been able to obtain and maintain full-time jobs. She reported that he has been involved in long-term romantic relationships. Medically, she related that her son suffers from high blood

pressure and asthma. She stated that she was "surprised" by the current allegations against her son and that she has never heard any prior similar complaints regarding her son. She stated that she has never observed him engage in any behaviors or heard him verbalize any statements that were suggestive that he was sexually attracted to juveniles. She reported that she would remain emotionally supportive of her son throughout his current legal situation and in any future treatment endeavors.

**Psychological Testing:** The Millon Clinical Multiaxial Inventory –Fourth Edition (MCMI-IV) is one of the most frequently utilized personality tests in forensic and clinical settings. It contains several Validity Scales to assess for possible response distortion and numerous Clinical Scales to assess for the possible presence of major mental disorders. Additionally, the MCMI-IV provides extensive information on an individual's personality that might be of assistance in determining treatment appropriateness. Validity Scales did not reveal any significant elevations on test scales designed to assess for random responding, fabrication, or defensiveness. As a result, Clinical Scales were determined to be valid and therefore interpretable. Clinical Scales revealed significant elevations on test scales designed to assess for depression, Bipolar Disorder, and avoidant personality traits.

The Beck Hopelessness Scale (BHS) is a frequently administered test designed to assess feelings of hopelessness. The examinee obtained a Total Score on the BHS that falls in the Low range. Individuals who obtain the same score as the examinee are reporting few symptoms of hopelessness during the seven days before and on the date of the test.

The Beck Anxiety Inventory (BAI) is one of the most commonly administered screening tools for anxiety. The examinee obtained a Total Score on the BAI that falls in the Moderate range for anxiety. Individuals who obtain the same score as the examinee are reporting several symptoms of anxiety during the 30 days before and including the test date.

The Beck Depression Inventory – Second Edition (BDI-II) is one of the most commonly used brief assessment scales for symptoms of depression. The examinee obtained a total score on the BDI-II that falls in the Moderate range of depressive symptomatology. Individuals who obtain the same score as the examinee are reporting several symptoms of depression during the two weeks before and including the date of the test.

The Structured Inventory of Malingered Symptomatology (SIMS) is a screening assessment for possible exaggeration/fabrication of mental health symptoms and cognitive/intellectual deficits. The examinee scored below the established test cut-off score. Individuals who obtain the same score as the examinee are rarely diagnosed with Malingering.

Reliable Digit Span is an effort test requiring the examinee to repeat several digits forward and backward. Individuals who score below the cut-off score are often suspected of poor effort on cognitive tasks. The examinee scored above the established cut-off score on this test. As a result, the examinee's score was consistent with adequate effort on cognitive tasks.

**DSM-5-TR Diagnostic Impressions**

    Bipolar I Disorder with possible psychotic features
    Attention-Deficit/Hyperactivity Disorder

**Conclusions:** The examinee reported numerous symptoms of a mental health disorder separate and apart from a substance abuse disorder. He further revealed an extensive history of outpatient mental health services, and he was prescribed psychotropic medication at the time of this assessment. Psychological testing revealed indications of depression, anxiety, mood fluctuations, and avoidant personality traits. Validity testing did not reveal any indications of inadequate effort or malingering. In a telephone interview with the examinee's mother, she corroborated her son's self-report regarding mental illness and a history of treatment interventions. It would likely be of assistance to review the examinee's prior mental health records and current jail medical records for additional clinical information. If the current allegations are determined to be accurate as reported, the examinee would be an appropriate candidate for placement into weekly sex-offender rehabilitation groups at a program such as REACH in Fort Lauderdale, Florida. He should also be considered for weekly individual counseling due to the presence of a major mental disorder. Counseling sessions should ideally consist of cognitive-behavioral interventions focusing on impulse control, emotional regulation, medication compliance, and goal-setting. He should be required to attend monthly psychiatric case management services to monitor the efficacy of his prescribed schedule of psychotropic medication. He should be required to obtain and maintain full-time employment. He did not display any factors that would prevent him from benefiting from treatment services as outlined above.

Thank you for the opportunity to participate in this interesting case and please feel free to telephone me if you require further information on this matter.

**Michael P. Brannon, Psy.D.**
Licensed Psychologist
PY4289