

Office: (954) 766-8826  
Fax: (954) 764-3486

11760 W. Sample Road, #103  
Coral Springs, Florida 33065

**Confidential Forensic Psychological Evaluation**
**(Sex Offender Risk Assessment)**

| | |
|---|---|
| **Examinee's Name:** | Michael Simpson |
| **Case #:** | 21-8520CF10A |
| **Date of Evaluation:** | 03-02-22 |
| **Date of Report:** | 03-04-22 |
| **Judge:** | George Odom, Jr. |
| **Defense Attorney:** | David Sobel, Esquire |
| **Examiner:** | Michael P. Brannon, Psy.D. |

**Referral Information:** The examinee was evaluated at the request of his attorney, Mr. David Sobel, for a sex-offender risk assessment with risk reduction strategies if clinically indicated. The examinee was evaluated on the above date at Paul Rein Correctional Facility in Pompano Beach, Florida. He is charged with Lewd and Lascivious Molestation Victim Less Than 12 Years of Age and Offender 18 Years of Age or Older, Sell Obscene Material to a Minor, and Lewd and Lascivious Exhibition. He has been incarcerated since 09-09-21.

**Sources of Information:**

Clinical Interview
Mental Status Examination
STATIC-99R
Minnesota Multiphasic Personality Inventory – Third Edition (MMPI-3)
Beck Depression Inventory – Second Edition (BDI-II)
Beck Anxiety Inventory (BAI)
Beck Hopelessness Scale (BHS)
Substance Abuse Subtle Screening Inventory – Fourth Edition (SASSI-4)
Reliable Digit Span
Miller-Forensic Assessment of Symptoms Test (M-FAST)
Telephone Interview with Ms. Vicky Simpson (examinee's mother)

**Relevant Historical Information:** Mr. Simpson reported that he is 24 years of age and that he was born in Coral Springs, Florida on 02-09-98. He stated that raised by his mother and father along with two brothers and one sister. He did not report any incidents of physical, sexual, or emotional abuse during his formative years. He stated that he observed several incidents of domestic violence between his mother and father in his childhood home. He described his childhood as "alright." He reported a family history of mental illness (sister, brother, father, grandmother). He was not aware of any family history of drug/alcohol abuse.

Academically, the examinee reported that he completed high school in honors classes. He stated that he earned above average grades in school. He related that he was never retained in a grade level. He did not report behavioral problems in school. He reported problems in school due to inattentiveness. He related that he was diagnosed with Attention-Deficit/Hyperactivity Disorder (ADHD) while in school and prescribed stimulant medication for the symptoms of that condition. He reported that he was never bullied or excessively teased by his peers in school.

The examinee reported that he has never been married. He related that his longest romantic relationship lasted for four years. He reported that his longest period of cohabitation in a romantic relationship was for approximately one year. He did not report any incidents of domestic violence in his romantic relationships. He reported that he does not have any children. He related that he was residing with his mother and father in Pompano Beach, Florida at the time of his arrest. He reported that he has never been homeless.

Occupationally, the examinee reported that he was employed as a branch manager of a flooring supply company at the time of his arrest. He stated that his longest job lasted for three years. He related that he was never fired from a job. He reported that he has never received Social Security disability benefits. He revealed that he received unemployment benefits during the coronavirus pandemic. He related that he has never served in the military.

Legally, the examinee reported that he was never arrested before his current charges. He stated that he has never been a member of a delinquent youth gang, militia group, or cult.

Socially, the examinee reported that he has several friends in the community. He indicated that none of his friends have experienced legal problems or abuse drugs or alcohol. Recreationally, the examinee reported that he enjoys playing video games.

Regarding his mental health history, the examinee reported that he has participated in outpatient psychiatric case management services since he was nine years of age. He stated that he participated in outpatient individual counseling between the age of 9 and 16. He reported that he has been prescribed psychotropic medication in the past and he was taking Tegretol (anti-convulsant), Effexor (antidepressant), and Lamictal (mood stabilizer) at the time of this assessment. He related that he has never been psychiatrically hospitalized or a resident in a program. He stated that he has been diagnosed with Bipolar Disorder, ADHD, and depression. He reported that he has never attempted suicide, although he has entertained ideations of self-harm on several occasions. He revealed that he purposefully cut himself several times when he was a teenager. He related that he experiences severe mood fluctuations when he is not prescribed psychotropic medication. He reported that he has experienced numerous symptoms of depression and anxiety. He stated that he has experienced auditory hallucinations for the past several years mostly in the form of "people calling my name." He did not report any "special powers" or other possible delusional beliefs. He revealed a history of anger control problems. He stated that he was exposed to a traumatic incident when he was 16 years of age during a near-drowning experience. He did not report any symptoms of posttraumatic stress.

The examinee acknowledged that he has used alcohol. He stated that he has never used illicit drugs or abused prescribed medication. He revealed that he initially used alcohol when he was 18 years of age. At the time of his arrest, he stated that he was using alcohol at an approximate rate of two times per year. He reported that he has never used alcohol daily. He stated that he has never participated in substance rehabilitation treatment or attended a recovery group meeting. He reported that he has never engaged in problematic gambling behaviors.

Medical health was reported as remarkable due to asthma, herniated discs, and arthritis. He stated that he has never suffered a head injury.

**Mental Status Examination:** The examinee was appropriately groomed and attired in a blue jail uniform. He reported that he is 5'9 tall and weighs 250 pounds. He wore eyeglasses during the assessment and he displayed a tattoo on his right upper arm. His general clinical presentation was cooperative and his demeanor was pleasant. He was able to state his name, date, and location. Motor responses were within normal limits with no apparent impairments. Eye contact was direct. Attention span was within normal limits as he was not easily distracted by extraneous stimuli. Memory functions were intact on brief measures of those cognitive skills. Responses to examiner inquiries were appropriate in volume, pacing, and word production. He did not display any behaviors that were suggestive of the presence of imaginary internal stimuli (hallucinations). He did not verbalize any statements that were suggestive of an active delusional belief system. Functional intelligence was grossly estimated in the High Average range based upon his use of vocabulary and general fund of knowledge. He expressed his emotions in a full range and his mood was congruent with the content of the assessment. Judgment, problem-solving skills, and insight were good. He did not report suicidal or homicidal ideations or plans.

**Collateral Interview:** In a telephone interview with the examinee's mother, Ms. Vicky Simpson, she reported that her son was never exposed to abuse during his childhood. She stated that her son completed high school and attended "some college." She reported that her son displayed academic problems at times while in school. She related that her son was diagnosed with ADHD while in school and prescribed stimulant medication for the symptoms of that condition. She further stated that her son displayed symptoms of depression while he was in school including cutting himself and stating that he wanted to die. As a result, she stated that he participated in individual counseling sessions when he was a juvenile. As an adult, she reported that her son was diagnosed with Bipolar Disorder and was prescribed psychotropic medication by a psychiatrist for that condition. She stated that he has displayed severe mood fluctuations. She reported that he has never displayed anger control problems and she has never observed him engage in aggressive behaviors towards others. She stated that her son was never arrested before the current legal charges and that he has not displayed problems complying with established rules and regulations. She revealed a family history of mental health problems. She was not aware of any drug or alcohol abuse by her son. She stated that he has been able to obtain and maintain full-time jobs. She reported that he has been involved in long-term romantic relationships. Medically, she related that her son suffers from high blood pressure and asthma. She stated that she was "surprised" by the current allegations against her son and that she has never heard any prior similar complaints regarding her son. She stated that she has never observed him engage in any behaviors or heard him verbalize any statements that were suggestive that he was sexually attracted to juveniles. She reported that she would remain emotionally supportive of him throughout his current legal situation and in any future treatment endeavors.

**Psychological Testing:** The Minnesota Multiphasic Personality Inventory – Third Edition (MMPI-3) is a frequently administered personality test in clinical and forensic settings. It has several Validity scales designed to assess for response distortion and numerous Clinical scales designed to assess for symptoms of a mental health disorder. Validity scales did not reveal any significant elevations. As a result, Clinical scales were determined to be valid and interpretable. Clinical scales revealed significant elevations on Dysfunctional Negative Emotions (maladaptive anxiety, anger, irritability), Cognitive Complaints (memory problems, difficulty concentrating),

Helplessness/Hopelessness (belief that goals cannot be reached or problems solved), Self-Doubt (lack of self-confidence, feelings of uselessness), Inefficacy (belief that one is indecisive and inefficacious), Stress (problems involving stress and nervousness), Worry (excessive worry and preoccupation), Behavior-Restricting Fears (fears that significantly inhibit normal behavior), Impulsivity (poor impulse control and nonplanful behavior), and Shyness (feeling uncomfortable and anxious in the presence of others).

The Beck Hopelessness Scale (BHS) is a frequently administered test designed to assess for feelings of hopelessness. The examinee obtained a Total Score on the BHS that falls in the Low range. Individuals who obtain the same score as the examinee are reporting few symptoms of hopelessness during the seven days before and on the date of the test.

The Beck Anxiety Inventory (BAI) is one of the most commonly administered screening tools for anxiety. The examinee obtained a Total Score on the BAI that falls in the Moderate range for anxiety. Individuals who obtain the same score as the examinee are reporting several symptoms of anxiety during the 30 days before and including the test date.

The Beck Depression Inventory – Second Edition (BDI-II) is one of the most commonly used brief assessment scales for symptoms of depression. The examinee obtained a total score on the BDI-II that falls in the Moderate range of depressive symptomatology. Individuals who obtain the same score as the examinee are reporting several symptoms of depression during the two weeks before and including the date of the test.

The Substance Abuse Subtle Screening Inventory – Fourth Edition (SASSI-4) is a substance abuse assessment tool designed to provide information regarding the possible presence and severity of drug and/or alcohol problems. It provides Validity Scales to assess for random and defensive responding. It also contains numerous scales designed to assess for the possible presence of drug and alcohol problems. Validity Scales did not reveal any indications of response distortion as discussed above. Test results did not reveal any significant elevations on test scales designed to assess for drug or alcohol abuse problems.

The Miller Forensic Assessment of Symptoms Test (M-FAST) is a brief structured interview designed to assess an individual's probability of malingering psychiatric illness. Scores that exceed the established Total Score cutoff are suggestive of malingered psychopathology. The examinee obtained a Total Score on the M-FAST below the established cutoff score. Individuals who obtain the same score as the examinee are rarely diagnosed with Malingering.

Reliable Digit Span is an effort test requiring the examinee to repeat several digits forward and backward. Individuals who score below the cut-off score are often suspected of poor effort on cognitive tasks. The examinee scored above the established cut-off score on this test. As a result, the examinee's score was consistent with adequate effort on cognitive tasks.

**DSM-5 Diagnostic Impressions**

> Bipolar I Disorder with possible psychotic features
> Attention-Deficit/Hyperactivity Disorder

**Recent Allegations:** The Probable Cause Affidavit alleged that the examinee displayed a pornographic video of children engaging in sexual behavior with adults to the eight-year-old daughter of his fiancée while they were in his vehicle. It was also alleged that the examinee directed the same minor victim to manually stimulate his penis until he ejaculated. The examinee was reported to have initially denied the allegations, although he subsequently acknowledged that he had shown pornography to the victim while masturbating in her full view. It was further stated that the examinee indicated that the victim and her younger sister were passengers in his vehicle at that time. Moreover, the examinee was reported to have stated that he invited the victim to participate in his sexual activity by touching his penis, although she reportedly declined his invitation. He was subsequently reported to have disclosed that he has possessed, distributed, and traded child pornography.

**Examinee's Self-report:** The examinee was asked several questions regarding his actions on the dates of the alleged offenses for assessing his future risk of sexual reoffending. However, the examinee's responses to the above questions were not included in the report due to the predisposition status of his current legal charges.

**Psychosexual History:** The examinee reported that he was involved in sex education classes when he was in middle school. He stated that he never spoke to either of his parents about sex. He reported that he did not speak to his male friends about sex during his teenage years. He stated that he initially masturbated when he was "12 or 13" years of age. He did not reveal any problematic patterns regarding masturbation such as excessiveness or inappropriate locations. He reported that his first sexual contact with another person that did not include intercourse occurred when he was 16 years old. He disclosed that his initial sexual contact which included intercourse occurred when he was 17 years old. He stated that he has been involved in sexual activities with five females in his life. He reported that he has never been involved in multiple partner sex. He identified his sexual orientation as bisexual. He reported that he never forced or coerced another individual into sexual activities. He reported that he never used drugs or alcohol to facilitate sexual activities with a person who initially refused to engage in sex. He revealed that he visited a "strip club" on one occasion. He stated that he has visited an adult book/video store on several occasions. He stated that he never exposed his genitalia to a non-consenting adult for sexual arousal (exhibitionism). He indicated that he never viewed a non-consenting adult engaged in sexual activities or undressing for sexual arousal (voyeurism). He reported that he has engaged in sexual activities involving physical pain and humiliation of himself and another person (sadomasochism) several times. He reported that he has never used the services of an escort or prostitute. He stated that he has never purposefully touched the genitals of another person and pretended that it was accidental (frotteurism). He reported that he has never dressed in women's clothing for sexual gratification (transvestitism). He did not report engaging in any sexual activities involving animals of another species (bestiality). He did not report any sexual activities involving feces or urine (coprophilia, urolagnia). He reported that he was been involved in sexual activities that involved choking (erotic asphyxiation) of himself and others on several occasions.

The examinee reported that he initially viewed adult pornography online when he was 15 years of age. He reported that he has masturbated to adult pornography online on numerous occasions. He reported that his preferred category of adult pornography involves "Blowjobs" and "MFF Threesomes." He reported that he has never accessed a webcam sex room. He stated that he has

sent and received naked images by cellular telephone on numerous occasions with consenting adult females. He reported that other than the current allegations, he has never engaged in a conversation regarding sex with a juvenile online or in-person since he has been 18 years of age and older. He reported that he has never spoken to another adult in person or online regarding sexual activities with juveniles. He reported that he has volunteered for church activities on several occasions that involved frequent contact with juveniles. He reported that he has never experienced any sexual attraction for prepubescent children. He reported that he has never masturbated to images or fantasies of prepubescent. He reported that other than the current allegations, he has never engaged or attempted to engage in sexual activities with juveniles since he has been 18 years of age. He stated that he has never taken a video or picture of a juvenile in the community for sexual purposes. He reported that there have never been any prior complaints regarding his sexual behavior. He reported that he has never belonged to an organization or group that endorsed sexual behaviors between adults and juveniles. He reported that he has never experienced any sexual performance problems such as premature ejaculation, erectile difficulties, or loss of sexual desire.

**Actuarial Assessment:** The *STATIC-99R* is an actuarial instrument developed for assessing the potential risk of future sex-offending behavior for an identified offender. *The following actuarial analysis is only valid if the current allegations are accurate as charged.* The examinee's STATIC-99R scores were as follows:

| | |
|---|---|
| Prior Sex Offenses | 0 |
| Prior Sentencing Dates (4 or more) | 0 |
| Convictions for Non-Contact Sex Offenses | 0 |
| Index Non-Sexual Violence | 0 |
| Prior Non-Sexual Violence | 0 |
| Any Unrelated Victims | 1 |
| Any Stranger Victims | 0 |
| Any Male Victims | 0 |
| Age | 1 |
| Ever Lived with Lover for at Least Two Years | 1 |

**Conclusions:** The examinee's score of 3 is in the comparison group classified as Average risk range (1.9%) on the STATIC-99R for sexual re-offending during the next five years. Individuals who obtained the same score as the examinee reoffended at a rate of 6.5% over five years and 10.1% over 10 years. In an abundance of caution, the examinee should be considered for a polygraph examination to assess for other possible sexual contact offenses. Psychological testing revealed significant emotional distress including symptoms of depression, anxiety, and social avoidance. Tests and test sales designed to assess for response distortion did not reveal any indications of malingering or poor effort. In a telephone interview with the examinee's mother, she corroborated that her son has been diagnosed with mental health disorders and provided psychiatric and psychological treatment interventions. If the current allegations are determined to be accurate as reported, the examinee would be an appropriate candidate for placement into weekly sex-offender rehabilitation groups at a program such as REACH in Fort Lauderdale, Florida. Research has consistently shown a modest yet significant reduction in recidivism rates for sex offending with individuals who have completed treatment programs. The examinee

should also be considered for weekly individual counseling due to the presence of a major mental disorder. Additionally, he should be required to attend monthly psychiatric case management services to monitor the efficacy of his prescribed schedule of psychotropic medication. The examinee should be required to obtain and maintain full-time employment upon his eventual release from custody as research has indicated that individuals who are employed tend to re-offend at a lower rate. The examinee did not display any factors that would prevent him from benefiting from treatment services as outlined above.

Thank you for the opportunity to participate in this interesting case and please feel free to telephone me if you require further information in this matter.

**Michael P. Brannon, Psy.D.**
Licensed Psychologist
PY4289